```
                   UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
```

Chad T. Maynard

   v.                                   Civil No. 14-cv-467-LM
                                         Opinion No. 2015 DNH 076
Meggitt-USA, Inc.


**O R D E R**

Plaintiff Chad T. Maynard ("Maynard") filed a three-count complaint against his former employer, Meggitt-USA, Inc. ("Meggitt"), for violation of the Americans with Disabilities Act, intentional infliction of emotional distress ("IIED"), and defamation. Meggitt moves to dismiss the IIED claim for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the court grants Meggitt's motion.

**Standard of Review**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014)

(citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.  However, dismissal is proper if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008).

## Background

The following facts are drawn from the complaint.  Maynard began working for Meggitt in July 2004, when he was hired to work in the information technology department of Vibro-Meter, Inc., a Meggitt subsidiary company.  After Maynard was diagnosed with degenerative disc disease, arthritis, and Lyme disease, Maynard requested and obtained medical leave for back surgery.  In 2011, prior to Maynard's medical leave, Meggitt announced its plans to consolidate its workforce and transfer manufacturing operations from its Londonderry, New Hampshire facility to a facility in California.

Maynard had back surgery in April 2013, but due to complications, required an extension of his medical leave. Maynard alleges that Meggitt was frustrated at this extension and his prolonged absence.

Maynard returned from his medical leave in late May 2013. During the summer of 2013, Meggitt notified certain employees that their positions would be eliminated as part of the consolidation process.  Maynard alleges that he was not given notice at that time, but that on June 12, 2013, he "was suddenly . . . informed that his position was being eliminated."  Compl. (doc. no. 1) ¶¶ 16, 21.

Shortly thereafter, Meggitt suspected its welding equipment had been stolen.  Meggitt suspected that Maynard was responsible, and Meggitt placed him on administrative leave.  In spite of the fact that the missing equipment was later found, Meggitt "kept Maynard on administrative leave and refused to communicate with him about coming back to work."  Id. ¶¶ 22-23. Furthermore, Maynard alleges that Meggitt spread false allegations to other employees that Maynard was responsible for the missing equipment.  Maynard was not allowed to return to work, and Meggitt terminated him on October 31, 2013.  Based on the foregoing, Maynard alleges that Meggitt is liable for IIED.

**Discussion**

To state a claim for IIED, a plaintiff must "allege that a defendant by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another." Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (quoting Morancy v. Morancy, 134 N.H. 493, 496 (1991) (internal quotation marks and alterations omitted)).  Meggitt moves to dismiss the IIED claim arguing both that the complaint fails to identify the requisite emotional injury and Meggitt's alleged actions, taken as true, are insufficiently extreme and outrageous to give rise to a viable claim for IIED.

A. Emotional Distress

Maynard must allege severe emotional distress to state a plausible claim for IIED.  See Tessier, 162 N.H. at 341.  Severe emotional distress

> includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.  It is only where it is extreme that the liability arises. . . .  The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

Morancy, 134 N.H. at 496 (quoting Restatement (Second) of Torts § 46 cmt. j).

Maynard's complaint alleges that he suffered "damages, including[] back pay, front pay, loss of employment benefits, interest and other monetary losses, attorney's costs and expert fees." Nowhere in his complaint does Maynard allege that he suffered emotional distress of any kind. Further, Maynard does not seek to amend his complaint under Fed. R. Civ. P. 15(a). Instead — and for the first time — Maynard offers in his objection that he suffered "severe emotional distress including loss of sleep, depression, loss of appetite and anxiety."

The law on this is clear. A plaintiff cannot overcome the deficiencies in his complaint by asserting new facts in a responsive brief. See Cadegan v. McCarron, No. 00-540-JD, 2001 WL 716111, at *2 (D.N.H. June 25, 2001); Bauchman v. West High Sch., 132 F.3d 542, 550 (10th Cir. 1997) ("[C]ounsel may not overcome pleading deficiencies with arguments that extend beyond the allegations contained in the complaint. The complaint itself must show [the plaintiff] is entitled to relief under each claim raised.") (internal citations and quotation marks omitted).

Because Maynard's complaint is wholly devoid of allegations that he suffered emotional distress of any kind, and because he is barred from inserting new facts into his complaint via his

objection, Maynard's IIED claim fails.  Thus, Meggitt is entitled to dismissal of this claim.

### B. Extreme or Outrageous Conduct

Even if this court credited Maynard's new allegations of emotional injury, his IIED claim fails for an additional reason. A claim for IIED requires an allegation of extreme and outrageous conduct — conduct that is more than intentional or driven by malice.  See Tessier, 162 N.H. at 341 (citing Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Mikell, 158 N.H. at 729.

Maynard alleges that Meggitt spread false allegations, kept him on administrative leave, and refused to communicate with him.  Even if driven by malice, this conduct is not sufficiently "atrocious" to sustain a claim for IIED.  See Mikell, 158 N.H. at 729.

In the workplace, false accusations, inadequate investigations, humiliating treatment, and abuse of authority generally do not amount to outrageous or atrocious conduct

6

sufficient to state a plausible IIED claim.  See Palmerini v. Fidelity Brokerage Serv., LLC, No. 12-cv-505-JD, 2014 WL 3401826, at *9 (D.N.H. July 9, 2014) (dismissing IIED claim under New Hampshire law where defendant badgered plaintiff about his work performance, falsely accused him of making mistakes, alleged him to be a "corporate spy," and yelled at and insulted him).  Cf. Soto-Lebron v. Fed. Express Corp., 538 F.3d 45, 60–61 (1st Cir. 2008) (upholding denial of IIED claim under Puerto Rico law where defendant conducted inadequate investigation into plaintiff's alleged misconduct, immediately suspended plaintiff, and then publicly escorted him off company premises during work hours); Walton v. Nalco Chem. Co., 272 F.3d 13, 19 (1st Cir. 2001) (upholding dismissal of IIED claim under Maine law where defendant transferred plaintiff's sales accounts to a younger employee, spread a false and demeaning performance review about plaintiff, and repossessed a company car in front of plaintiff's family and neighbors).

    Here, Maynard admits in his objection that "being placed on administrative leave alone might not constitute 'extreme and outrageous' conduct."  Maynard argues instead that the extreme and outrageous element is met by the combination of (1) Meggitt

placing him on administrative leave,[1] (2) Meggitt's discovery that the welding equipment was not stolen, and (3) Meggitt's continued false allegations against him.  While this alleged conduct could certainly be characterized as offensive, it does not rise to the requisite level of outrageousness.  See Palmerini, 2014 WL 3401826, at *9 ("false accusations of criminal conduct, defamation, humiliating treatment during an investigation, and failure to conduct an adequate investigation to exonerate the employee do not amount to outrageous conduct that would support an [IIED] claim").

In his objection, Maynard relies on Karch v. Baybank, 147 N.H. 525 (2002).  In Karch, the employer allegedly used an illegally intercepted telephone conversation between the plaintiff and a co-worker, a conversation that was personal and took place outside the workplace, to accuse the plaintiff of misconduct.  Id. at 528, 531.  The employer then threatened, without cause or legal authority, to monitor her conversations

---

[1] Maynard also argues that Meggitt is liable because it refused to reinstate Maynard from his administrative leave, even after the missing welding equipment was found.  However, this action is "well within the latitude we afford employers investigating employee misconduct."  Soto-Lebron, 538 F.3d at 60.  As such, Meggitt's decision not to reinstate Maynard cannot form the basis of an IIED claim.

and discipline her.  Id. at 531.  After the plaintiff reported to the employer that she was "susceptible to emotional distress," the employer did nothing to abate the hostile and abusive conduct it directed at her.  Id.  Ultimately, the plaintiff took medical leave and then resigned to escape the hostility.  Id. at 529.  The fact that the employer escalated the hostile environment after it learned of the plaintiff's susceptibility to emotional distress rendered the conduct sufficiently outrageous to state an IIED claim.  Id. at 531.

Maynard's reliance on Karch is misplaced.  Maynard does not allege that Meggitt illegally listened to his private conversations, or that Meggitt created a hostile work environment in response to a legitimate complaint from Maynard about the illegal conduct.  Nor does Maynard allege that Meggitt continued to direct hostility toward him after learning that he was susceptible to emotional distress.

In short, Maynard's allegations in support of his IIED claim fall short of the mark.  The court therefore finds that Meggitt is entitled to dismissal of the IIED claim on this additional basis.

## **Conclusion**

For the foregoing reasons, the defendant's motion to dismiss Count II (document no. 7) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 7, 2015

cc:   Jon N. Strasburger, Esq.
      Christopher Cole, Esq.
      Brian Bouchard, Esq.